We will hear argument first this morning in Case 12-820, Lozano v. Alvarez. Mr. Regan. Thank you, Mr. Chief Justice, and may it please the Court. I represent Manuel Jose Lozano, a father who loves his daughter. Respondent kidnapped that daughter and concealed her from Mr. Lozano, first in the United Kingdom for nearly 8 months, then in France, then in the United States. In Abbott, this Court recognized child abduction to be one of the worst forms of child abuse, and that the Convention, therefore, aims to deter and prevent child abduction from occurring in the first instance. Equitable tolling furthers that aim. By contrast, the rule adopted by the Second Circuit provides a playbook for thwarting the Convention. It says to an abductee. Ginsburg. Mr. Regan, you want us to apply equitable tolling in a field, family law, where the interest of the child is always of paramount importance. I mean, running all through family law is that concern. And change circumstances figure very large. So decrees that might be final in another area of law are not, because if circumstances change, then the child custody may change. So it seems to me that this area is peculiarly unfit for equitable tolling that would leave out consideration of the child's best interests. Justice Ginsburg, we believe that equitable tolling does provide, within the context of the Convention, consideration, the opportunity for courts to consider the interests of the child. And that's most poignantly illustrated by some of the cases in which it has been applied. If I may provide an example, an example in Respondent's brief, Mendez-Lynch, v. Mendez-Lynch, on page 31 of their brief, is a case in which the Court found equitable tolling as available, and it found equitable tolling applied factually. The Court, however, considered the facts and circumstances of the child's life, including those facts and circumstances that relate to the extent to which the child is settled. But it considered those facts and circumstances within the rubric of the Article 13 analysis. And that is consistent with what other courts have done in what I would term more natural Article 12. Kennedy, is that equitable discretion or is that still equitable tolling? Because as I understand equitable tolling, if it applies and, say, there's a six-month suspension, the child must go back so that there's so that the weighing that you're talking about just doesn't come into play. Thank you, Justice Kennedy. And I think this is important because I think this illustrates how foreign courts have miscomprehended equitable tolling and how it would operate, how it operates within the context of the convention. Equitable tolling would prevent the abducting parent from taking advantage of the Article 12-2 exception. That the child should not be returned because the child is now – because the parent has met that minimal routine showing of the child is now settled. He's going to school. He or she has some friends, so on and so forth. They are living a normal life here. What it does not prevent, and Mendez illustrates this, as do other cases, it does not prevent the Court from looking at the Article 13 considerations. So, for example, as in Mendez and other cases, the Court will still consider if the child is of sufficient age and maturity to testify, such that the Court should take into account his or her views or objections to return. The Court can do so. But it can't return it. Ginsburg.  I'm sorry, Justice Kagan. Where is it in the materials? Mendez v. Lynch? Article 13. Oh, Article 13. I'd like to read it. I'm sorry. Article 13 is at – I'm sorry. It's at 135A of the Petition Appendix. Excuse me. Article 13 is at 136A. Excuse me. 135A is at 136A. And it does provide, just what people are looking at it, it does provide that even though there's, in your view, equitable tolling, there are still circumstances in which the child would not go back if there's a grave, grave risk of harm to the child. Or if the Court finds that it would be an intolerable situation. But again, as Justice Ginsburg's questions, it seems to me, indicate there are two different axes here. One is the best interest of the child, and the other is an adequate deterrent so that parents don't abduct. But those axes don't cross very often, if at all. I think, I respect, Justice Kennedy, it's difficult to balance them. They're somewhat incommensurate or, you know, competing considerations, but both very important. We think that equitable tolling properly balances them within the structure of the Convention, because equitable tolling, again, it prevents this Article 12-2 exception, but it doesn't prevent the Article 13 exception. In fact, in many ways, what we're talking about is not inconsistent with what the English court does or did in canon. In canon, the Court said where there is concealment and subterfuge, there will be a heightened burden for establishing settlement. Now, in this case, I think that's true, but Article 13 still is different from what's in the best interest of the child. Now, it's true that all we're talking about is during the time in which the hearing takes place, but these hearings take years, and expert witnesses are not available or readily available. Well, Justice Kennedy, to your point about timing and essentially provisional return, I do think, you know, courts, district courts have shown great adeptness at dealing with those issues. They've entered conditional orders that require the child be returned at a time when the proceeding, when the testimony is necessary. Alito, let me give you this example. Suppose a child is abducted at age 1 and is concealed for 10 years, and then the location of the child is discovered, the other parent files a petition, so that if there's equitable tolling, the petition was filed within 1 year. But during those 10 years, the child has become very well settled in the new country, has learned the language of that country, the customs, developed, gone to school, developed relationships, and so forth. Under — if there is no equitable tolling, but the abduction can be taken into account under the doctrine of equitable discretion, that's one thing. But the way you read this, the way you read the convention, the equitable tolling would mean that the petition was filed within a year, and unless one of the conditions in Article 13 was met, for example, a grave risk that the child's return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation, then there would be — then the child would have to be removed. So there is that major difference, isn't there, between those two positions? There is a significant difference, and we think that significant difference is warranted and necessary in order to achieve the effect of deterrence. Because the Second Circuit's rule essentially says to abducting parents, if you abduct your child and you conceal your child for 12 months, you will be rewarded for this opportunity to get return. Alito, the position of the Respondent and the government would give a great incentive for parents to abduct children and hide them for a period of time. But on the other side, as my example, I think, illustrates, your rule would mean that a child who is very well settled in a particular location would have to be returned to the other country for purposes of a custody determination. So why do you think the convention should be read one way rather than the other? Justice Alito, I hope to make abundantly clear that our position, equitable tolling, would not mandate that that child be returned. All it does, but it's significant, is it changes the question that the Court asks. Absent equitable tolling, the Court's question on which the question before the Court is, is this child settled? And the factors that courts looked at, that courts have looked at, that are really their, you know, settlement is not defined in the convention, and Congress has left it to courts to decide. And courts look at the fact that the child is settled. Scalia, which of the articles, which of the provisions in Article 13 would, would prevent the return in the hypothetical that Justice Alito just gave you? Courts have looked, I'll say, in the decades. Scalia, I mean, what does Article 13 allow the Court to consider? It says it's not bound to order the return if the person, institution, or other body having care of the person of the child was not actually exercising the custody rights at the time of removal or retention. Well, you know that. That's known as acquiescence, Justice Scalia. That wouldn't apply. Or had consented to or something. That wouldn't apply in his hypothetical or in this case. It's really B. B. There is grave risk that his or her return would expose the child to physical or psychological harm. I mean, we have no reason to believe that your client would harm the child or that the parent in Justice Alito's hypothetical would harm the child, or otherwise place the child in an intolerable situation. I don't see how any of those things would come to the assistance of the child in Justice Alito's hypothetical. If I may explain, by way of illustration in some of the cases, what courts have looked at, and let me give Blondin as another example, cited in our brief, cited by the Solicitor General, well-known Second Circuit case, that's a natural Article 12-1 case. Petition is filed before the period of one year expires. The Second Circuit looked at, or Judge Chin, then Judge Chin in the district court, looked at the child's facts and circumstances related to settlement as part of that grave risk analysis. There was expert testimony, as there often is in these cases, that the child was suffering from potential – from post-traumatic stress disorder. Experts testified that return of the child, the child should not be returned because it presented a grave risk of harm to the child. Scalia Physical or psychological harm. Petitioner That's correct. And there are cases, Mendez-Lynch and others. Scalia It might be now and then, but in the routine case that Justice Alito just gave you, I don't see how there's any reason at all not to yank the child back from wherever he's been for 10 years. Petitioner Well, if I may answer in two ways, in the example Justice Alito gave, with a 10-year-old child, it's very likely that the court would hear from that child. I think the more difficult example is, let's make that child 7 or 8. But – and there's no evidence that these cases have occurred. Kennedy Which court?  To use the – Petitioner The United States court. Scalia But Article 13 does not say the child can stay – well, let's see. The child objects to being returned. I guess you could limit to that. They also refuse to order the return of the child if it finds that the child objects to being returned. Petitioner It's been universally adopted by the court. Scalia So that's the one exception. Yeah. Petitioner But the grave risk exception, and courts have applied this, is it really – it really just – it changes the question, like in canon. Kennedy But in a sense what you're saying is that it's not an automatic – it's not an automatic rule. The more you argue that Section 13 is applicable, the more you're watering down the very rigid rule that you want in order to say that there has to be deterrence. Petitioner I understand that point. However, there is a difference. And so what we're trying to balance here, and I think it's not we, what the convention balances, what courts applying the convention have found is the proper balance, is not for courts to say, well, let's try and figure out what the best interests are. In fact, the convention couldn't be clearer and Congress couldn't have been clearer that that is not where it – that's where it least wanted courts wading into those waters. Breyer The convention says in the preamble that the parties, countries, are firmly convinced that the interests of the children are of paramount importance in matters relating to their custody. Okay? Paramount importance. So the provision you're talking about, Article 13, says, well, would returning the child lead to physical harm, psychological harm, or otherwise put the child in an intolerable position? So they mean intolerable. So I think this would be a pretty typical case. The husband says he was fine. The wife says no, he kicked me in the stomach and did a lot of other things. The judge, hearing two sides, says I can't say the husband's right. Okay? So we don't know. Now, your idea is to send the child back to the husband unless the child gets up there and chooses between parents. That's pretty tough on 8- or 9- or 10-year-old children, and very tough. And you're going to keep the child, you're going to send it back to the father in this situation unless the mother can prove it's intolerable, either because of physical, I mean, my goodness, physical or psychological. You have all the doctors saying you should stay in New York, a typical problem for a family court judge, really tough. So you have the convention which says in the preamble, look to the interest in the child. You have every other country saying that's what it really means, in other words, they're against you. You have the Department of State in charge of the treaties saying that's what it really means and otherwise against you. And so what do you have going for you? That isn't your fault if there isn't too much going for you, but nonetheless, I'd like to know what it is. I think we have a lot going for us. You've asked that you've – I think you've hit, Justice Breyer, on just about every issue that I could possibly want to address today. But – and let me say, I respect the position of the 8 or 9-year-old child, the difficulty. I was that child before a judge on giving that sort of testimony, so I certainly appreciate it. But on this question, on this question of best interests, the convention makes the decided choice that courts – the convention defines how courts are to determine that best interest. It doesn't say courts should determine what is in the best interest of the child. It says look at whether the child is settled under Article 12, or if that's not applicable, you may look at Article 13. Other than that, the presumption is the best interest of the child is for return. You mentioned that the State Department is against us, which I'm happy to take the opportunity to address here. We don't believe that the State Department's views should be accorded great weight in this situation. Their brief does not speak to the diplomatic consequences of equitable tolling. It doesn't speak to the – it doesn't speak to the idea that equitable tolling will somehow impair our ability to recover children abducted from the United States. Ginsburg-Gilmour, aside from the position of the United States, which has changed – you made that point – the determination that's being made at this stage is really one of venue. It's where the main bout will be fought out. And so we don't want that to linger for a long time. We want that decision to be made with dispatch. And as one of the amici briefs informs us, many of these what you call kidnappers happen to be badly abused women. And if you – if they had to go under Article 13, then they would have this full-blown was he really the abuser? Doing it without equitable tolling, that question is reserved for the main – for the main bout. I suppose if we had a case where the judge isn't certain was the father abuser or not, that judge would feel an obligation to stretch out this venue determination to see if it's an Article 13 situation. I think, Justice Ginsburg, the domestic violence situation, which I am entirely sensitive to and appreciate, illustrates the difficulty of these cases and that courts can't really figure out what's – who's right or who did what in these circumstances. Most of – usually all of the evidence is overseas on that issue. What the Convention – the approach the Convention decides on taking is that, first, there is no self-help remedy, certainly for concealment, that nothing excuses concealment of the child. And in fact, to the extent you said that there's a goal and a value of shortening these proceedings, to the extent equitable tolling disincentivizes concealment, it does that. I mean, the opposite rule says if you conceal, i.e., you extend that period of time during which there's no relationship, you'll be rewarded. It's an enormous incentive. And our point is there is the proper safety valve. The standard under Article 12-2 is so pedestrian. It is essentially have you failed to be, aside from abducting your child, since then, have you failed to be a normal parent? Is your child in school? Does he or she go to ballet class? Do you take him or her to church? Do they have friends? All those things were satisfied here. Can you be employed? What's your legal limit? What's your immigration status? Now, this case illustrates just how simple and routine that is to achieve. I mean, here she didn't have a job. She's not here legally. I guess the Court found that she had the depth and quantity of friendships that your typical prekindergartener has. And that was enough for her to defeat return. The Convention properly balances these things by saying where it presents, and courts have done this, the district courts are doing this, no one says, you know, the State, the Solicitor General, the law respondent, points to a single case where they say, here's equitable tolling, and boy, you know, the Court got it wrong. Here was the wrong outcome because they applied equitable tolling, as they have been doing for nearly two decades. Courts can do this, but the question, as it is in canon, can't be as simple as, well, are you doing fine here in the United States? Kagan. Mr. Regan, Justice Breyer pointed out that all other countries seem to disagree with you. That's obviously a concern of ours when we interpret a treaty that all other countries interpret it in a single way. Do you contest that? Are there any other countries that apply equitable tolling rules? Regan, Justice Breyer. We believe that it's neither surprising nor momentous that foreign courts have failed to adopt equitable tolling. It's not surprising because they lack the presumption that we do. It's not significant for two reasons. One, we think, as I've alluded to, I think they miscomprehend equitable tolling. The canon court calls it too crude, that it won't allow for an accounting of the child's interest. And as the courts in the United States have made clear, it does. It provides a way to make it clear. Scalia, they may be wrong. Who cares if they're wrong? The point is a treaty should be interpreted uniformly by all the parties to it. And you're telling me, well, all the rest of them interpret it another way, but they're wrong. You know, everybody's out of step but me. That's just not right. Not at all, Justice Scalia. And it was actually your question relates to my third point. What those decisions reflect is that the Convention leaves room within Article 12 for the operation of domestic law. Article 12 speaks to commencement of proceedings. You must commence proceedings within one year, and it speaks to settlement. The Convention is Congress, an ICARA, that defines how one commences proceedings. It says you must file in a court that has jurisdiction. That's section 11603B and F3, which are at 117 through 121A, the petition appendix. Congress decides that's how you stop that period, by filing in a court having jurisdiction. Other countries provide courts of nationwide jurisdiction. Some countries provide that the central authority itself will file the petition for the applicant or will file it in its own interest on behalf of the child. Scalia, none of that is covered by the treaty. Yes, each State may apply its own law with respect to matters not covered by the treaty. But I do not read that to say, to mean that each State may apply its own law in interpreting the provisions of the treaty, and so can create exceptions on the basis of equitable discretion when the treaty has none or because its courts use that in another context, or create an exception on the basis of equitable tolling. This is a matter of interpreting the treaty, not of bringing into effect some other principle of State law that overrides the treaty. That's how I read that provision. Our position is, in fact, if you look at the drafting history here, the drafting history was preliminary draft Article 11 provided for two periods, automatic return, if you will, return subject to the Article 13 and 20 defenses if you file within 6 months, or for a period, a discovery rule capped at one year if you do not know the whereabouts of the child. Some countries said those periods are too short, some said they are too long, some said we don't want to have to deal with this discovery rule issue, we are concerned about the evidentiary burdens. What's important is what the drafters did. They extended that first period to a year. And then with respect to this discovery rule concept, they said we are going to give you Article 18, provides for return at any time, we are going to provide Article 34, which the explanatory report highlights is meant to provide for invocation of domestic law or rules, particularly where 12.2 is implicated. And it left four countries to define the key elements of Article 12.2. In doing that. Sotomayor, I'm sorry, that's turning legislative history in my mind on its head. They considered directly, if you study the SG's brief, a discovery rule that would have codified equitable tolling, and there was lengthy discussion about it and a decision that they wouldn't do that, that instead they would expand the period to a year where automatic return was required, and they introduced the best interest of the child after that year, and that that was now a balancing of all interests, the parents and the child. And you are right, they had other provisions that would affect the possible return or lack thereof, and they never wanted to stop a court from returning a child if it's in its equitable discretion, decided it was appropriate. But you're turning that legislative history on its head a little bit. Justice Sotomayor, we believe that the State Department's reading of that history, of that drafting history, is oversimplified, because there were objections to that period, to that equitable to that discovery rule that weren't simply to a discovery rule as a general matter. It was some countries said, we don't want to have to deal with that. Other countries said it needs to be longer. And so the choice that was made was a choice to give countries flexibility to determine how they want to calculate that period, when it should be set, and potentially to employ equitable tolling. The jurisdiction convention is consistent with that idea. If it's not, I will reserve my time. Thank you, Mr. Chief Justice. Roberts. Ms. Moskowitz. Mr. Chief Justice, and may it please the Court. To reverse the Second Circuit's holding and to apply equitable tolling to Article 12 would be squarely at odds with the Convention's text, purpose, and drafting history, as well as contrary to the post-ratification understanding and interpretation of every other signatory State to consider the issue. Your Honors, we ended on a note of drafting history. And to return to Justice Sotomayor's question about turning that a bit on its head, I agree. The drafting history specifically shows that the countries considered two periods, one of prompt return, return forthwith within 6 months of the removal, and 6 months from the discovery of the whereabouts of the child if the child were not known. And what the drafters thought, some thought the period needed to be longer, but there were countries that wanted it to be shorter. There were countries that were very concerned that the child would become settled in the new environment such that uprooting that child again, just for purposes of having a custody determination in the former country of habitual residence, would be contrary to that child's interests. So they struck a balance. They negotiated over several drafts and finally arrived at a single period of 1 year. But that wasn't going to be a cutoff. Instead of having a statute of limitations, statute of repose construct, they said the obligation is going to continue and it's going to continue until the child turns 16, unless it is demonstrated that the child is now settled in her new environment. Alitoso, what troubles me about your position is that it undermines the best interests of children in a very powerful way, insofar as it does not deter and indeed encourages, provides a great incentive for parents to abduct their children. And that was the central purpose of the convention, to prevent harm to children and also to parents, but centrally to children who are abducted. And if you have a rule that says if you can abduct the child and you can hide for a year, which isn't very difficult, then all you have to do is provide some evidence of settlement and you are going to win. You are going to deter return. Am I wrong to be concerned about that? Your Honor, your concern is not wrong, but I think it's not founded on what will happen here. I don't think it encourages abduction and concealment, because that, those facts of concealment are going to be taken into account into whether the child, in fact, is settled. Alitoso, perhaps that's the solution to the problem, and I wonder if you would accept that, that there is no equitable tolling, let's assume for the sake of argument, but abduction is a strong factor that weighs against the return, that weighs against the failure to return the child, not just something that can be disposed of by the sentence, which is basically what the district court did here, but a very strong factor that has to be taken into account in the exercise of equitable discretion. Would you disagree with that? A bit, Your Honor, and it's the abduction itself is the, what triggers the convention to begin with. Every single case that is heard under the convention involves a wrongful removal or retention. There will be a legal abduction every time. And the drafters, in fact, absolutely were trying to address that harm to children. And they, the paramount interests of the children were designing this convention, and they did state that there were two primary. Scalia, they had in mind not just the interest of children, but the interest of parents. It's simply not true that in all cases involving children, the paramount interest of the child governs. That's not the case, or else we would remove many children from their parents in this country. Absolutely, Your Honor. Parents have rights. Absolutely. And that is one of the things that this treaty considers. Your Honor, it does not consider ultimately the custody determination and with which parent the child should live. That is expressly not part of the convention, and that is not true. Well, the, the, whether or not the child is settled in a particular case is certainly going to be a significant consideration in the custody determination, isn't it? Yes, Your Honor, I would presume so. But as well as any wrongful acts of either or both parents would be taken into account in a full-blown merits best interest of the child custody determination. What the convention is trying to address in the instances of where a child is now settled in a new environment after having been at least one year in the new environment is, should the child be uprooted in anticipation of that full-blown. What's the fairness? The problem is you are each using the child as the tool in the objective that you have in representing the parents. On the one side is the allegation of inequitable conduct in concealment. On the other side is the interest in settlement. That's a dispute between the two parents. And the child is being used as, as, I don't know what the, you know, a tool in implementing those conflicting considerations. And to the extent that the convention was designed to deter that kind of kidnapping and it adopted a fairly strict rule, and you are each trying to say, oh, the rule doesn't mean what it means, because don't worry, we will take those considerations into account in addressing custody. And on the other side, well, don't worry, because there is not that much difference between 12 and 13. So how are we supposed to decide between those two conflicting considerations of the parents while maintaining the paramount concern, certainly not the exclusive one, but the significant one in the interest of the child? Yes, Your Honor. And just to address the one point that the Petitioner raised of the don't worry about Article 12 because there is Article 13, those are completely different constructs. In fact, Congress recognized that when it set a different burden of proof for defenses under Article 13 as opposed to the well-settled, settled analysis under Article 12. Roberts But that cuts against you in some respects. You say there is such a big difference and therefore it is very important that the kidnapping parent do the best he or she can to conceal the child's presence so that it get beyond 13 and into 12. No, Your Honor, because if the parent is concealing the child, for example, if the parent is moving from place to place to evade detection or changing the child's name or not enrolling the child in school to avoid detection. My gosh, all it takes is moving to Peoria. I mean, I don't mean to denigrate Peoria, but all it takes is moving to a place that has no connection to Peoria. Justice Sotomayor is from New York. Yeah, obviously. Obviously. Those of us from the Midwest think it's actually easier to hide a child in New York. Yes, Your Honor. I do have a question, though. What sense does this make when that a child who a suit is filed within the year, but the litigation takes two, or the child who a filing is a day after the year and the litigation takes a year, and they are both in the same situation? Why should those two children be treated differently? Why should one have the benefit of settled now and the other not have it? Your Honor, I think that's a good question. What sense does it make when, as Justice Alito indicated, part of the central purposes of the Convention is to avoid the kidnapping of children? Your Honor, absolutely that is one of the objectives of the Convention, and it exists because that was presumed to be contrary to the interests of children. And I don't dispute that in the majority of the cases that's true. But the concept that the drafters had to grapple with this issue, they wanted to deter child abductions, absolutely. But they also recognized that at some point in time it wasn't going to be just about  It was going to be about children at home. Sotomayor So why isn't Article 13 enough protection? It has to do with, and unlike Justice Scalia, I don't think it's psychological or physical harm necessarily by the parent, but by the situation, the return. You agree with that? Yes, Your Honor. I do think it should be broader than that. I think there are courts that the Article 13 defense is supposed to be narrow, just like the Article 12-2 settled exception. But the settled exception isn't enough. Excuse me, Article 13 isn't enough because the drafters wanted Article 12-2. They wanted to be able to take into account the situation of the child after this one year. And why one year and not one year, including the hearing? I think it was a balance. The drafters were concerned both that it was going to be too long and that it was going to be too short. Kagan, Ms. Moskowitz, going back to Justice Alito's question, could you tell me how you think this works? You said in response to Justice Alito that sometimes concealment can be a factor in determining whether a child is settled. And I presume you mean if somebody conceals the child by moving the child from place to place, the child will not be settled. Is it also a factor in determining whether a settled child should nonetheless be returned? Your Honor, I think that's the question of whether and to what extent there is discretion to return a settled child under Article 12. And I think that's the question of whether and to what extent there is discretion to return a settled child under Article 12.  to return a settled child under Article 12. Or under Article 18. Your Honor, Article 18, my understanding of Article 18 and the government's interpretation of Article 18 is that Article 18 was designed not as a duty or something arising under the Convention, but a recognition that the Convention is not an exclusive statement and not intended to occupy the space on child abduction and return. Scalia, I think your answer to Justice Kagan's question has to be no, or else I don't understand what we're doing here. Your Honor, I struggle with this because I think that there is a reading of the plain language that says no. But it's – there is a general feeling that there should be some sort of escape hatch. Breyer, what is the answer? I'd like a straight answer in your opinion, because Justice Kagan's case. The mother kidnaps the child. They live in a grain elevator, a nicely refurbished grain elevator in Peoria for a year. And after the year, a month later, the father finds the both of them, goes to a family judge, very tough job, by the way, and the family judge reads this and he says, well, I have to admit the child is settled here now in Iowa. All right? Is settled. But if we send the child back to London, he's going to be just about as settled. I mean, really, it's not that much difference. But I can't say the child is not settled. The father says this is the most unfair thing I've ever seen. She hides out for a year. The child will be just as well back in London, or almost as well. Who knows? Maybe better. Now, what can the family court judge do? That's the straight question we've been trying to get your answer to that, and it isn't an answer to say, you could say, if that's the answer, I don't know. Your Honor, in that question, there's the question of what can they do under the convention and what can they do? What can they do? I just want to know if the family court judge who will say please settle this, and the two of them won't. Yes, Your Honor. So now what can the judge do? Is the father simply out of luck or not? No, Your Honor, because a full-blown merits best interest of the child analysis under the custody-type family court proceeding that is envisioned to follow a return petition under the convention will take all of those facts into account. No, but prior to that, if we could go back to the do you agree with Justice Scalia that really at that point there's nothing to do? That once the determination has been made that the child is settled, there is no remaining discretion that the judge has? Your Honor, I think there is some discretion under Article 12 to return a settled child, but it cannot be under a set of facts that were completely within the minds of the drafters when they chose the one-year period. I don't understand what you're saying. Give us an example. Your Honor, it's hard to come up with a specific example, but there can't be. You just don't want to say no. It seems to me your case requires you to say no, and it's no help to me to say, well, you know, there may be some exceptions that I can't describe. Tell me the exceptions, if there are any. Your Honor, the exception to whether a child that is found to be settled, after all the facts of the case are taken into account, there should remain some discretion. Under 13, right? Is that the discretion you're talking about? No, Your Honor. It's discretion under Article 12, but it's in the same vein of there is discretion under Article 13 and 20 as well. The way that the language is written in Article 13, for example, states that the State is not bound, I'm on 136A of the Petition Appendix, that the State is not bound to order the return if it is established. So it's not saying that the return must be denied if these defenses are established. There's slightly different language in Article 12, which I think is a reflection of the different drafting procedures. Alito, you're confusing me. Let's say I'm the judge who has to decide this. The one-year period has just passed, and I have evidence that this child, who is now 2 years old, has some friends, goes to play with the friends, goes to the park, has become accustomed to some American customs, knows the neighborhood. So the child is settled to that degree, and you say, even if there's been very elaborate, a very elaborate effort of concealment, no proffered justification for the abduction, no indication that there would be any serious harm if the child were sent back to the U.K., you say that's just too bad. That's your answer. No, Your Honor. I think some of the factors you pointed out, for example, that there would be no serious harm if the child were returned, not necessarily physical harm or intolerable situation under Article 13, but there, Article 12 settlement, it does take into account roots. It's not routine. It's not just a matter of time. Breyer. Breyer. I read that exactly in Article 12, but you've now given me a different impression. What Article 12 says is that if it's less than a year, the child is returned forthwith. If it's more than a year, the child shall be returned forthwith unless unless it is demonstrated the child is now settled in its new environment. It doesn't say you don't return it if the child is now well settled in the environment. It just says you don't have to return it forthwith. Yes, Your Honor. So I would have thought that that would have opened room for discretionary factors. But you have not given me a case that said that that's so. You have not given me anybody who said that what I thought was the natural reading and which you'd like to be the natural reading, you've not given any support for the proposition that it is the natural reading. Scalia. And I assumed from your brief that that was not the reading you were given. And that is not the reading it has to be given, frankly. I read it the other way. I assume that to mean, in which case, you shall not order the return. Isn't that the way you've been reading it? No, Your Honor. We do in our case. Oh, it is not. Okay. Well, then, gee, we don't have a lot to argue about here. If you're reading it that way, I mean, I was reading it Justice Scalia's way, too, that the first clause says shall and the second clause says shall not. But there is an alternate reading where the first clause says shall and the second clause essentially says may or may not at your discretion. But, boy, that would open up a big discretionary hole if you read it that way, wouldn't it? No, Your Honor. It shouldn't be read that broadly. It's certainly an – the House of Lords in England, in Ray M., did find that there was a residual discretion after finding a child. So I should read that case because the language says unless it is demonstrated, the child is now settled. You return it forthwith unless it is demonstrated the child is well settled. Well, now it's demonstrated well settled. Does that mean I cannot return it or does it mean I don't have to return it? Your Honor, I think that's the way the House of Lords interpreted it. And they relied on Article 18, didn't they? No, Your Honor. They found the discretion within Article 12. Ms. Moskers, what do you do about Article 13 in that case? Which begins, notwithstanding the provisions of Article – of the preceding Article 12, the judicial or administrative authority to request a rate is not bound to order the return of the child if the person blah, blah, blah. That says to me that under 12 you are bound. And you're telling me, well, you're really not bound under 12. You have discretion anyway. Your Honor, you have this. I frankly didn't understand if that was your argument in this case, and it puts the whole case in a quite different light. Article 12, you are absolutely bound to return the child unless you meet one of these exceptions within the one year, forthwith return. Prompt return is the idea of the first clause of Article 12. Sotomayor, that's the one year. Correct. And under Article 12.2, that's saying the child – the court shall also order the return after this one-year period unless it is demonstrated. And the question is what happens if it's demonstrated? And that's do you have to return still, or can you, or do you have to keep the child here? And I think what the – generally the courts have found, and it's not unanimous internationally. It's not. Hong Kong says it's not. In many cases, this would be an example. The cost of experts to testify about the child's adoption or adaption or settlement in New York would be very substantial. The experts who would examine the child, the experts who knew about the school, the school officials themselves, would all have to go to England to testify. Is that a factor that the courts consider, or is that not relevant? Your Honor, I think those facts are exactly why the settled exception exists. It recognizes that the reason to get the child immediately back under the year. Kennedy, in other words, settlement is a code word for saying ease of producing witnesses? No, Your Honor. It's not, but it certainly is a recognition that the justification for return and prompt return is in part to return to the status quo ante of where the child was for purposes of having a custody determination. Ms. Busser. May I ask you, and I think you're brief.  There is equitable tolling, and everybody in all the other countries agree on that, but there is equitable discretion. I think that you – and the question is, is there this equitable discretion  Briefly, please. Your Honor, the courts are divided internationally on whether equitable discretion exists to return a child that has been determined to be settled. But I think on balance there should be some level of equitable discretion to return a settled child, but not under simply because of facts of concealment that were firmly within the minds of the drafters when drafting Article 12. Thank you, counsel. Ms. O'Connell, what's the government's position on this question we've just been 12 is absolute, or whether there is discretion even within Article 12, even though specific elements of discretion are contained in Article 13? It's our position that under Article 12 there is discretion to return a settled child, and that that comes from Article 12 itself. As you pointed out, the language of Article 12 says that if more than a year has passed, the court shall order the return of the child unless the child is settled in her new environment. And I mean, I think it's clear that that could be read in two ways. And the Court has said that when the similar except shall formulation, and we cited in our brief the Department of Commerce v. U.S. House of Representatives case, the similar except shall language, it's interpreted depending on the context in which it appears. And we think it's very clear from the Convention that in the context of the Convention and specifically Article 12, that the better reading is that a settled child may be returned. Scalia, why doesn't the context include Section 13, which lists specific reasons why you can depart from 12? I mean, it seems very strange to say, and in addition to that, there is a whole pot load of other reasons within 12 itself. Well, Article 13 and 20 are written in expressly discretionary language, but those are sort of set out as exceptions to the rule of Article 12. Article 12 is written up differently, but there's nothing in the Convention that ever says that a child has to stay in the country where she has been abducted to. Kennedy, what's the example of where a settled child might be returned? A very, two very good parents, and the child is very adaptable, and so the child is well settled now, but the child will be well settled in the new environment as well. Is that the hypothetical? In exercising the discretion, the Court should be guided. It's not just a freewheeling discretion that the Court is exercising under Article 12. We think it's guided by the purposes stated in the Convention. So, yes, first you look at whether the child is settled, and that could be enough to defeat the presumption that an abducted child should be returned. You can also look at whether the child could easily resettle if the child was sent back. For example, a 10-year-old child who was in school and had a lot of friends and a routine in London was abducted to the United States for a year. That child may not be settled in the United States, but she may not have a difficult time resettling. Scalia Do you expect all the signatories to this treaty to come up with essentially the same exceptions under what you say is the interpretation of Article 12? I mean, it seems to me it just makes that article impossible to apply consistently country to country. No, I don't think so. And the other signatories have almost all, I mean, I think the Hong Kong court does say that it doesn't have discretion, but it said in that case nevertheless it would, even if it had discretion, it wouldn't order the children returned. But the other courts of signatory countries that have interpreted Article 12 have all found a discretion, whether it be in Article 12 or in Article 18. And if I may, Mr. Kennedy. Scalia Have they exercised it? Have they exercised it? That discretion which they say is there. Have they exercised that discretion not to apply the mandatory requirement of Article 12? Yes. I mean, courts in the United States have done that. I think courts in other countries have as well. Scalia Talk about foreign courts. Yes. Kagan But if I understand the way you think this works, you don't need to say there's not even a presumption that a settled child will stay, right? You're just saying once you've found a settled child, the obligation to return the child goes away. But at that point, it really is a kind of all things considered inquiry with no presumption operating at all, just in light of the purposes of the treaty. Well, I think the last part, Justice Kagan, is the most important part, that it has to be guided by the objectives of the treaty, that it's not a freewheeling best interest of the child analysis or where this child should be, but you could take into account the principle in Article 12 that it's harmful to uproot a settled child, but you can also weigh against that the idea that this convention is really geared in the first place toward preventing abduction. Roberts I would think it would be very unusual for a family court in that situation not to go ahead with the custody proceeding before it, because it would think the child is settled. Now, do I send the child back so that they can do the custody proceeding in England or just go ahead and do it here? Don't you think most family court judges would say, let's just go ahead and do it here? Well, if there's a reason to send the child back, even a settled child, we think that the purposes of the convention should prevail there to have the child. Roberts What kind of reasons would there be to send the child back? That the parent engaged in behavior like concealing the child that is not condoned under the convention that's in place. Roberts So you would visit on the child the behavior of the parent? We think the court – I mean, the court has discretion, we think, to order the child returned even if she's settled. I mean, that discretion could be abused if a child has been in the United States, for example, for 5 years and the court says, well, the child was being concealed so we will send the child back. But we think that – and there will be some cases in which the court could probably not abuse its discretion by deciding the case either way, but, yes, we think on the one hand, equitable tolling is not a good way to deal with this problem, because Article 12 specifically wants courts to take into consideration the interest of the child. Sotomayor Counsel, whatever fears my colleagues have, I've only found two – or I should say my clerks have only found two published decisions in which courts have returned a child. So it's not as if they're ignoring the settlement issue. In fact, some might say that they're not giving adduction enough weight in enough cases. But the Hong Kong court who said there might not be a discretion to return a settled child was not the highest court of Hong Kong either. That's right. I don't think any of these decisions are from the highest court. And so if we're going to give uniform meaning, the uniform meaning of international weight is that abduction is one factor for a court to consider in its equitable tolling, and that's why there's no weighing on settlements, because that's the whole purpose of the convention. That's a central reason in the preamble. That's right. But isn't there always abduction, as your friend has pointed out? The whole treaty only applies where the child's been abducted. So you say, oh, well, there's a special exception to the rules of the treaty where the child's been abducted. But that's what the treaty applies to. We understand that an abduction is going to take place in every case. I think we are looking for something more than what happened in this case, some sort of concealment that happened so that the parent that is left behind and looking for the child cannot find him. I don't know what sense that makes. Let's say a child is abducted in Mexico, and let's say that the parent who is left behind is not a richer, sophisticated person. And now the child is brought to the United States, and the parent in Mexico has a year to find the child in the United States, doesn't speak English, can't easily find a lawyer to handle the case. He's got an enormous country to try to find the child in the United States. How in the world is that going to be done? Well, I don't know. You don't need to do very much concealment. You can go to Peoria, you can go to New York City, and it's going to be an enormous struggle to find that child within a year. The first thing I'll point out is that Article 12, the drafters assumed that there was going to be some difficulty in locating children, and they decided on this one-year period, but also point out that the State Department dedicates significant resources to finding children that are thought to have been abducted to the United States. They have access to all sorts of Federal law enforcement databases to try to determine if the child has come here. They have a contract. Ginsburg. How would that aid be invoked? Take Justice Scalia's example of the parent left behind in Mexico, no resources of her own or his own. How would the State Department get into the act? Typically, the left-behind parent will approach the central authority in his or her own country, and typically with an idea of what the abducting parent's connections are to other countries. And so if the United States is singled out as a country to which the child might have been taken, the Mexican central authority would contact the United States central authority, and immediately somebody would be assigned to start looking for that child within the United States. And there are a great number of resources that are channeled toward that through the State Department in working with other Federal agencies, the crime databases, the Federal Parent Locator Service that's used to track down people in the United States to pay child support. It works with State law enforcement agencies who can check school records and driver's license records and things like that. So it's not like it's — I mean, it is difficult. We are acknowledging that it's quite difficult. Kennedy, how separate are the two concepts of the best interest of the child and the interest in policing parents so they don't abduct? At what point do they intersect? Well, I mean, we think the convention starts with the presumption that a settled child should be returned. And so the starting presumption is always that you should not abduct the child. That a child settled when the abduction took place. Excuse me? It started that a settled child should be returned? That an abducted child should be returned. Yes. Abducted. When the determination that the child is settled can overcome that presumption, and then the other equitable factors like concealment come into play. Justice Scalia. I have one more question. At the end of the day, now that I understand the government's position, I don't see any difference between your position and the position of the Petitioner here, except that he wants to call it equitable tolling, and you want to say we can take concealment into account under Section 12 and not apply the absolute rule where there has been concealment. I don't care whether you call it equitable tolling or not. I think the positions are quite different, because under an equitable tolling analysis, putting aside that you may be able to satisfy a different convention in defense, like one under Article 13 or 20, under an equitable tolling analysis, the Court would be prohibited from taking into account whether the child is settled in her new environment in determining whether to send her back. Thank you, counsel. Mr. Regan, 5 minutes. I would agree. That is, in fact, the central difference, isn't it? I would agree with Ms. O'Connell that there is a difference. And a huge one. Well, the difference is not that a court cannot take the facts and circumstances of the child's life into account. It can. That is the Mendez case. That's Rae Zolkwin. That's Blondin. There are innumerable cases that show that. They can – the Court can take that into account. It's just a question of what is the question to which the Court applies those facts. Under our circumstance, it's not this Article 12-2, is the child doing fine here? Is the child living a normal life? It's a different question. Is the goal and motive and presumption for return going to be defeated here because it would present a risk of harm to the child? We think that's the right question, because that's the only question that deters concealment. Breyer, can I ask you how it works here? I realize I don't know. A year has passed. The father never found out where the child was. Now he suddenly finds out, he runs to Iowa. The judge looks at this convention and he says, well, the year has passed, you've lost, let's say. And I don't have to return him forthwith. The child is not going to suffer intolerable injury. I can't use that. I don't have to return him forthwith. Now I look as he's settled. Yes, he's settled. All right? End of the matter. But do we now, in the discretion of the father, have a custody hearing? The father can say, yes, all that's true, but I should have custody. And he goes, and under Iowa law, we see who is entitled to custody. And he has something going for him. Namely, the mother has acted pretty badly, unless she has excusing circumstances, in abducting the child. Does that happen or not? Well, the custody proceeding would occur in a different court. Of course, it wouldn't occur in the Federal. No, it would go to the family court. So is that, would that happen? Could that happen? Of course, I think. Of course. Of course. If the answer is of course, what we're talking about here is, on the one hand, we don't want to encourage abductions. On the other hand, we don't want to treat the child as a yo-yo. Absolutely. So the question is whether the custody hearing will be in a family court in Britain or whether it will be a family court in the United States. That's right. That's the correct question. Is that right? That is the question. But also the question is how do we deter him from that? So our issue about whether there's discretion or not, that's a little bit secondary because we can have a big, full-blown hearing about who should have custody, though it will be in a different court. It's true, if you lose, there is more incentive to kidnap the child. It's also true, if you win, there is a much greater likelihood that the custody hearing will be in Britain rather than the United States, which is the yo-yo problem. Now say what you want to say, if I understand it correctly. Our concern is the deterrence and prevention, which is the goal of the Convention. Justice Scalia asked about other nations and uniformity, and there could be no better reflection about the room created in Article 12 and that this, that uniformity is not, or that this is not a problem where we need to be so concerned about uniformity. In 2006, through the special commission process, meeting of the members of the Convention, the United States specifically apprised the other nations that it was employing equitable tolling in a 12-2 context. As the government concedes, no one else disagreed. No one expressed any concern about the United States doing that. That's a clear reflection that there is this room in Article 12. Government's and Respondent's position is that concealment may be taken into account. The problem there is the Respondent still has this enormous incentive to conceal, which is the purpose, that's the primary goal, to prevent that from happening, concealing and abduction. That's the goal of the Convention. But also, there's no standard. They haven't articulated a standard. The government doesn't articulate one. It amounts to a standard that says concealment matters unless it doesn't. That's an enormous, that ephemeral standard is very difficult for a Respondent to overcome. It's very difficult for a district court to apply. And what it does is it creates this incentive to conceal, because no one even knows what the question is. Equitable tolling defines the question within the context of the Convention. It says by tolling, this is the question you should answer. If there's not to be tolling, and there are lots of courts, lots of cases where courts have found we shouldn't toll because the child wasn't concealed or the parent didn't exercise due diligence finding the child, then we'll ask the Article 12-2 question, whether the child is settled. The bottom line is equitable discretion will result in the abduction of more children. Equitable tolling will disincentivize that. I would urge the Court to look at those cases I mentioned, Mendez, Blondin, Reyes-Olkwin is another one, 2005 Westlaw, 67094, a 2005 case in the Eastern District of New York, Judge Gleeson, where return was denied under these circumstances. Now, that's a natural 12-1 case, I believe, but the Court looks at these factors of settlement. Excuse me, Your Honor. Mr. Chief Justice. Roberts. Thank you, counsel. The case is submitted.